[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
Introduction and Factual Background
 A.
On May 22, 1990, the plaintiff, James D. Greene submitted an application[1] to the defendant Ridgefield Planning Zoning Commission (hereinafter, "the Commission") to (1) change the zone of a 2.03 acre parcel situated at the intersection of Ivy Hill Road and Halpin Lane from RAA (residential two acre) to MFDD (multifamily dwelling development), (2) amend Ridgefield's 1980 comprehensive town plan, and (3) obtain a special permit to construct sixteen apartment units with a mix of twelve one bedroom and four two bedroom units. Four of the one bedroom units were proposed to be "affordable" units.[2],[3] (Return Items a, b, c, d, cc).
 B.
The Commission scheduled and held a public hearing on July 24, 1990 with notice having been published on July 12, 1990 and July 19, 1990. (Return Item y). Attorney Neil Marcus, representing the applicant, stated that the proposal was filed under P.A. 89-311. James Sandy, a planning consultant, retained by the applicant, reviewed the project noting that the sixteen units would rent at below market rental rates at $440.00 to $600.00 per month. (Return Items bb, p. 8; cc). He commented on the projects location, with the Great Swamp to the east and the Quail Ridge development to the north. He CT Page 774 discussed the proposal's compatibility with the comprehensive town plan. In 1980, when the plan was adopted, the town had attained the goal of 15% multi-family but it currently had dropped to 12.8% (1019 units of a total of 7975 units) and was likely to drop to 10.7% at full town development. (Return Items bb, pp. 9-12; cc).
Attorney Marcus presented statistical data revealing that the 1989 median price for a house in Ridgefield was $342,000.00 and that for families renting in Ridgefield, 44.1% were paying more than 30% of their income for rent. (Return Items bb, pp. 17-18; ee, Table 37). He noted that the region's need (ten towns including Ridgefield in the Housatonic Valley) was 4233 additional affordable rental units. (Return Item ee) and that Ridgefield had only 60 units (in an elderly housing project operated by the town) or less then 1% of its housing stock that would qualify as affordable housing.
Howard Rubinow, III, a licensed professional engineer covered the engineering aspects of the application including site access, road access, improvements, etc. The project was to be serviced by municipal sewer and water by extending current services from Quail Ridge. He noted that while the sewer authority did not have current capacity, the facilities, when improved, would allow a discharge of 4,400 gallons per day, enough to satisfy the needs of the sixteen units. (Return Items bb, pp. 27-37; hh). A retainage pond was proposed to be constructed on the easterly side of the property to control the runoff into the Great Swamp. (Return Items bb, p. 29; gg).
A number of letters concerning required approvals were then read into the record. (Return Items bb, pp. 38-51; hh). Members of the Commission then questioned the applicant on a number of areas. For example, the applicant was questioned on whether the 12.8 multi-family percentage included two family homes. The 1980 plan had incorporated them into the 15% goal and when they were added to the 12.8% figure, the total percentage of current multi-family was 18.2%. (Return Item bb, p. 56). Commissioner Heyman asked several questions including whether a traffic study had been prepared (there was no traffic study). Mr. Katz asked additional questions concerning such areas as property values, buffers, the master plan, road improvements, and market defined affordable homes. He indicated that there were sixteen homes in Ridgefield with CT Page 775 selling prices under $200,000.00. (Return Item bb, p. 83).
Members of the public then asked questions. Apparently sixty-two people attended the public hearing and based on a question from an attorney representing an abutter opposed to the proposal, fifty-nine people were against the proposal and three were in favor. (Return Item bb, p. 92). The public commented on several issues including spot zoning, compatibility with present uses, traffic, location of the proposal, lot coverage, plantings, wetlands, density, wildlife, and property values. A petition with 735 signatures of Ridgefield residents opposed to the proposal was also submitted. (Return Item bbb). The public hearing was closed late that evening.
On September 18, 1990, the Commission unanimously voted to deny the application and notice was published in the Ridgefield Press on or about September 27, 1990. (Return Item nnn). This appeal was filed returnable November 6, 1990.
 II.
Discussion
 A.
As previously indicated, the plaintiff maintains that this application is governed by General Statutes 8-30g. This statute modifies judicial review of land development applications which include a certain percentage of affordable housing as defined in subsection 8-30g(a)(1).[4] While the Commission argues that the application does not meet the statutory definitions, this court must first address the threshold question of whether the Act even applies as it had an effective date of July 1, 1990. The applicant posits that other than the initial filing, essentially all actions took place after July 1, 1990, from the sending of notice for the public hearing to the public hearing and the decision meeting itself. The Act was discussed during these latter two proceedings. Thus, it argues, that no one, the applicant, the public, or the Commission, is hurt.
Public Act 89-311 is comprised of four sections: section one is the affordable housing legislation, now codified as General Statutes 8-30g. section 2(a), now codified as General Statutes 8-2h and 8-26a, is an amendment to the CT Page 776 general zoning and planning statutes allowing a pending application (whether before a zoning commission, planning commission, zoning board of appeals or any agency exercising zoning authority) which satisfies current regulations from complying with any changes to the regulations enacted after the filing. Additionally, an application may not be denied because it so fails to comply. Section 2(b), now codified as General Statutes8-2h(b), enacts similar language for building permits and certificates of occupancy. Section 3, now codified as General Statutes 22a-42e, has a similar rule for inland wetland applications and contains a further proviso that no appeal to the Superior Court shall be dismissed on the grounds that a change has been enacted after the date of decision. Section 4 states "[t]his act shall take effect October 1, 1989, except that section 1 of this act shall take effect July 1, 1990."
Sections two and three legislatively reverse judicial decisions that have found appeals moot if, after a commission decision, the commission has amended the applicable regulations. see, generally, McCallum v. Inland Wetlands Commission, 196 Conn. 218 (1985); Johnson v. Zoning Board of Appeals, 2 Conn. App. 24 (1984). The Legislature was obviously balancing the ability of a commission to not have its development plans "frozen", Edward Balf Co. v. East Granby,152 Conn. 319, 323 (1965), with the potential abuse by a commission, Marmah v. Greenwich, 175 Conn. 116 (1978).
There is a general presumption that, absent express language to the contrary, legislation is intended to operate prospectively. Harlow v. Planning Zoning Commission,194 Conn. 187, 194 (1984). General Statutes 1-1(a), states that "the passage or repeal of an act shall not affect any action then pending." section 55-3 states that "[n]o provision of the General Statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." This court can only conclude that the Act did not apply to the application as of the date when originally filed as the legislation did not include any specific provision indicating it would apply. Moreover, while legislation affecting only procedural rights does apply to pending actions, Demarest v. Zoning Commission of the Town of Plainville, 134 Conn. 572,575 (1948), this Act created far more than procedural rights. The plaintiff could not have an "affordable housing application" CT Page 777 for an "affordable housing development" prior to July 1, 1990 as those definitions just did not exist.
This court must then address whether this chrysalis like application transformed as of July 1, 1990. While it is clear that the Commission's pleadings in this case maintain that the Act does not apply — with the exception of the special permit application (Commission's Brief, p. 9) — all of its actions at the administrative level indicate that it treated the application as falling within the parameters of the Act. The record is replete with references to the Act and its applicability to these proceedings. Indeed, it was this court which raised the issue of the effective date — not either party as both assumed the Act applied. The Commission's argument is not that the Act could never apply due to the effective date but rather that the Act does not apply to legislative decisions. This court has previously rejected that position in TCR New Canaan, Inc. v. Planning and zoning Commission of the Town of Trumbull, 6 Conn. L. Rptr. No. 4, 91 (March 5, 1992) II.A.1-5. But see, Lantos v. Town of Newton Planning and Zoning Commission, 5 Conn. L. Rptr. No. 9, 216, Fuller, J. (1991). Had the Commission not been on notice of the applicant's intention to utilize the Act, this court could easily state that the applicant's false start would preclude it from utilizing the provisions of 8-30g. As indicated, such is not the case. Thus, as the Commission allowed this pre July 1, 1990 application to turn from a standard zone change application to an affordable housing application, this court will treat it as such. See Builders Service Corporation v. Planning and Zoning Commission, 208 Conn. 267, 299 n. 19 (1988); Fuessenich v. DiNardo, 195 Conn. 144, 151 (1985).
 B.
In TCR New Canaan, Inc. v. Planning and Zoning Commission of the Town of Trumbull, supra, this court reviewed the test for aggrievement under 8-30g(b). That analyses is applicable to this case. Essentially the statute states that:
 "[a]ny person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling CT Page 778 units . . . may appeal such decision pursuant to the procedures of section."
In this case, the plaintiff testified that he has owned the subject property since December 1988. Certainly under traditional aggrievement rules the plaintiff would be deemed aggrieved, Bossert Corporation v. Norwalk, 157 Conn. 279, 285
(1968), and as the Commission denied this affordable housing application, this court found at trial, and reiterates herein, that the plaintiff has a specific and legal interest which has been injuriously affected by the Commission's decision and is therefore aggrieved. Walls v. Planning and zoning commission,176 Conn. 475, 477-78 (1979).
 C.
1.
General Statutes 8-30g(c) states:
 (c) upon an appeal taken under subsection (b) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that (1) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (2) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (3) such public interests clearly outweigh the need for affordable housing; and (4) such public interests cannot be protected by reasonable changes to the affordable housing development. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal is taken in a manner consistent with the evidence in the record before it.
A review of this section indicates that the Legislature CT Page 779 has now placed the burden of proof on the commission, and not, as in traditional land use appeals, on the applicant. Like a traditional appeal, however, the evidence is to be gleaned from the record; the new process is not a trial de novo. The Commission is required to cite reasons for its decision and the reasons are to be supported by sufficient evidence.
This court again refers to its decision in TCR, supra, sections II.C.1-5 for a discussion of the standard of review and sufficient evidence rule.
2.
 a.
The Commission first discussed the application at its July 31, 1990 meeting. (Return Item eee). For each portion, the Commission unanimously voted to instruct the town planner to draft a memorandum of denial. Reasons for each denial were proposed by Commissioner Katz. The proposed memoranda were forwarded to the town attorney for review. (Return Item hhh). The Commission next met on September 4, 1990 at which time action on the application was tabled after distribution of the proposed memoranda. (Return Items hhh; iii). The Commission discussed the resolutions to deny at its September 11, 1990 meeting but took no further action. (Return Item jjj). The Commission discussed and voted to deny the application at its September 18, 1990 meeting.
As previously indicated, the application had three components: a change to the 1980 comprehensive plan, a change of zone and a request for a special permit.
According to the Commission's counsel, Ridgefield requires an amendment to its comprehensive plan if an amendment is sought to the zoning regulations. At first glance, this seems only appropriate as "such (zoning) regulations shall be made in accordance with a comprehensive plan." General Statutes8-2; Morningside Ass'n. v. Planning and zoning Board of City of Milford, 162 Conn. 154 (1972). The comprehensive plan has been defined as "a general plan to control and direct use and development of property in a municipality as a large part thereof by dividing it into districts according to the present and potential use of the properties." Damick v. Planning and CT Page 780 Zoning Commission of the Town of Southington, 158 Conn. 78, 83
(1969). Generally speaking, there is no comprehensive plan other than the zoning regulations themselves. Dooley v. Town Plan and Zoning Commission, 154 Conn. 470, 473 (1967). See also, Summ v. Zoning Commission of the Town of Ridgefield,150 Conn. 79, 88 (1962) ("the comprehensive plan of zoning for Ridgefield is to be found in the scheme of the zoning regulations themselves.").
A comprehensive plan is different from the master plan or plan of development adopted by the planning commission pursuant to General Statutes 8-23. This latter plan controls municipal improvements and the regulation of subdivisions of land. Purtill v. Town Plan and Zoning Commission of the Town of Glastonbury, 146 Conn. 570, 572 (1959). It is only advisory to the zoning commission and does not bind it. Lathrop v. Planning and Zoning Commission, 164 Conn. 215, 223 (1973). Yet, a zoning commission's reliance on the master plan for its action has been approved. Raybestos-Manhattan, Inc. v. Planning and Zoning Commission, 186 Conn. 466, 475 (1982). Moreover,P.A. 91-398 (effective October 1, 1991) and now codified as General Statutes 8-3a, requires a combined planning and zoning commission such as Ridgefield's to "state on the record its findings on consistency of a proposed zoning regulation or boundaries or changes thereof with the plan of development of the municipality."
It is clear to this court that the 1980 comprehensive plan is, in reality, a Section 8-23 master plan or plan of development and not the Section 8-2 comprehensive plan. Forest Construction Co. v. Planning and Zoning Commission,155 Conn. 669, 677 (1967); Dooley v. Town Plan and Zoning Commission, supra, 472. While not recognized as such in the defendant's brief, the resolution attached to the plan itself references section 8-23 (the planning function). Yet, the Commission seems to consider the master plan to be its comprehensive plan.
Notwithstanding this labeling problem and the merging of functions, see Cristofaro v. Burlington, 217 Conn. 103,106-107 (1991) ("the enabling statute for the planning commission, however, does not permit what amounts to de facto amendment of zoning ordinances)", the Commission's policy of requiring an amendment or at least consideration of the master plan as it considers an amendment to its zoning regulations CT Page 781 is, with certain exception,[5] unique and clairvoyant in light of P.A. 91-398. Nevertheless, this specific legal issue is not before this court. To the extent the applicant has requested an amendment to the master plan as part of its collective application, General Statutes 8-30g(2), this court will treat the denial as part of the request to change the zone.
 b.
In reviewing an administrative decision, the rule in Connecticut is that "where a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement of the commission. It should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision." Central Bank for Savings v. Planning Zoning Commission,13 Conn. App. 448, 457 (1988), citing DeMaria v. Planning Zoning Commission, 159 Conn. 534, 541 (1979). The reviewing court "ought only to determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." First Hartford Realty Corporation v. Plan Zoning Commission,165 Conn. 533, 543 (1973).
 c.
The first eight reasons for the denial are those utilized in the comprehensive plan denial: (1) inadequacy of Ivy Hill Road; (2) unreasonable walking distance; (3) ingress and egress problems; (4) compatibility with other development; (5) conflict with existing single family designation; (6) location; (7) density and (8) sufficient affordable units. Additionally, the Commission denied for traffic safety, infrastructure, and impact on value of homes.[6]
In TCR, supra, Section II.6.a. this court reviewed the case of Huntington Branch NAACP v. Town of Huntington,844 F.2d 926 (2nd Cir. 1988), aff'd 488 U.S. 15, reh. den.488 U.S. 1023 (1988) in which the refusal to rezone an area designated as single family for a multi-family use was, under that fact pattern, deemed a violation of the Fair Housing Act. That court divided the town's justifications into plan specific and site specific categories. Plan specific justifications would CT Page 782 be reviewed in terms of whether certain design modifications could resolve problems (see, General Statutes 8-30g(c)(4)). site specific problems would be reviewed to determine whether they were bona fide and legitimate (see, General Statutes 8-30g
(c)(2) and (c)(3)). Reasons 1CP, 3CP and 2 all concern the location of the parcel vis a vis a sharp turn in Ivy Hill Road. (Return Item xx). Reason 3 concerns the lack of sewer and water. The court will address these site specific reasons first.
As part of the application, the applicant filed a letter from Sue W. Manning, First Selectman, to Attorney Neil Marcus that the water Pollution Control Authority "is favorably inclined to extend hook up permission to the public sewers to your client, Jim Greene upon completion of the Ridgefield Sewer Plant expansion." (Return Item hh). The authority would allow 4,400 gallons a day which would satisfy the requirements for the proposal. (Return Item hh). The Commission's position that the proposal must be denied because the plant capacity was not then presently existing as required by the zoning regulations is without merit. (Return Item ooo, section 414.OF(5)). The plant was undergoing renovation and the WPCA obviously believed that the project could be serviced by the plant. (Return Item tt). This is not a situation where the plant was at capacity and the town had taken no action to enlarge the facilities.[7] see, Charles v. Diamond,360 N.E.2d 1295 (1977); Westwood Forest Estates, Inc. v. Village of So. Nyack, 244 N.E.2d 700 (1969).
As the WPCA was resolving the capacity problem, a blanket denial of all applications is improper. This court received no evidence that any form of moratorium had been imposed. It is obvious that no unit could be occupied until the plant could receive the flow from the project. Indeed, as part of the application, the Commission required an affidavit from the Town substantiating that the proposal would be serviced prior to occupancy and that a permit to connect would be issued. (Return Item ooo, Section 4.4.0D(6)). The March 22, 1990 letter fulfilled that requirement. Moreover, that requirement applies to special permits only — not zone changes.
The issue of public water is more troublesome. The zoning regulations require a statement that the project will be supplied by certain Utilities including water. (Return Item ooo, Section 414.OD(7)). The only evidence of water supply CT Page 783 was a letter dated October 6, 1989 from the Ridgefield water Supply Co. which stated "[t]he purpose of this letter is to advised (sic) you that town water can be provided with water service as soon as we obtain an additional source of supply. It is expected that this will occur during 1990." This letter is certainly different from the sewer permission. In October 1989 when written, there was insufficient water. No new information was provided at the hearing in July 1990.
The Commission's concern over the water supply is certainly well founded as the water company's letter is less then sanguine that a sufficient water supply exists for the proposal. There is no indication that the company has sufficient water, whether new wells have been approved by state authorities, etc. The Commission's reason therefore meets second test of section 8-30g(c): the decision is necessary to protect substantial interest in health, safety or other matters which the Commission may legally consider.
 d.
The second site specific issue concerns Ivy Hill Road, which the Commission argues is extremely dangerous as a result of a sharp curve 180 feet from the entrance to the site and which has an accident rate three times higher than the other roads in town. (Return Items bb, pp. 131-136 kkk). It may well be that Ivy Hill Road is, as the Commission argues, "a winding country road" (Brief, p. 20; see also Return Item xx), but as noted by Justice House, in Pope v. Killingworth Planning and Zoning Commission, 5 Conn. Law Trib. No. 49, p. 16 (Super.Ct. 1979), "the obligation of each municipality to maintain its roads in a safe condition is not open to doubt." Thus, in Reed v. Planning and Zoning Commission, 208 Conn. 431,433 (1988), the court rejected a claim that a subdivision could be denied because the town road abutting and servicing the property was inadequate to provide safe access. As noted by the court in TLC Development Inc. v. Planning and Zoning Commission, 215 Conn. 527 (1990), if the zoning regulations are silent on the issue of offsite traffic considerations, it is impermissible for the Commission to utilize such reasons to deny applications. Ridgefield's MFDD regulations are silent on offsite aspects except as set forth in sections 414.F.(4); (7) which deal essentially with traffic congestion. (Return Item ooo). The Commission did not ask for a traffic study which was authorized under its regulations. (Return Items bb, CT Page 784 p. 63; Section 414.D.5(K)). A more important issue is the discussion of the intersection of the development with Ivy Hill Road. see, Blakeman v. Planning Commission, 152 Conn. 303,306 (1965); Reed, supra, 436; Forest Construction Co. v. Planning and Zoning Commission, supra, 675. This concern involves a safety aspect which is different from the town's obligation to safely maintain its roads. To the extent the zone change denial was based on the general conditions of Ivy Hill Road, the Commission's reason is not persuasive. However, on the issue of traffic safety, vis a vis the intersection, this is an issue which may be both site specific and plan specific and which may need further consideration. Inasmuch as the denial is upheld on the water issue, it is presumed that the intersection issue will be reviewed again.
 e.
As mentioned, there were several other reasons for the denial, including incompatability with the other single family homes, density, impact on the value of other homes, etc. These issues were addressed by this court in TCR, supra, II.C.6.b(1) and this court refers to that opinion. This Commission also based its decision on the grounds that the proposal was approximately 1.2 miles from community facilities. While the exact distance is subject to debate (the applicant's consultant, James Sandy reports the distance as 0.5 miles (Return Item cc)), the concern is, like that of offsite traffic considerations in TLC, supra, not part of the Commission's purview under its regulations. Moreover, assuming the distance is 1.2 miles, this court does not believe that this distance consideration alone can outweigh the need for affordable housing. General Statutes 8-30g(c)(3). Needless to say, utilization of such a test could easily be used to thwart the purpose of the Act. See also, Huntington, supra.
 f.
In addition to the denial of the application to amend the "comprehensive plan" and change the zone, the Commission also denied the plaintiff's application for a special permit. As noted by the plaintiff, unlike the other two applications, in addressing this application, the Commission was acting in an administrative capacity. Housatonic Terminal Corp. v. Planning and Zoning Board, 168 Conn. 304, 307 (1975). Its discretion is more limited and it must approve an application CT Page 785 if the application conforms to the regulations. A. P. W. Holding Corp. v. Planning and Zoning Board, 167 Conn. 182
(1974). Obviously, to the extent the special permit was based on the change of zone which was denied, the Commission did not act improperly in turning down this special permit application.[8]
A review of the reasons indicates that the Commission essentially reiterated those listed in the zone change denial. As previously mentioned, the Commission was concerned with Ivy Hill Road, water and sewer, incompatibility with other developments, and pedestrian safety.
 g.
In a general reference to the conflict with the character of the area (reason 3) this court notes, as argued by the Commission, that the Department of Environmental Protection wrote of its concern as a result of the project's impact on the Great Swamp to the north. (Return Items qq; ss). It is impossible to review this project without recognizing that there may be an impact on the wetlands. On October 17, 1991, the Commission moved to dismiss this appeal on the grounds that the plaintiff failed to file an inland wetlands application in violation of General Statutes 8-3 (g) and8-3c (a).[9]
The plaintiff argues that as the Commission is also the town Inland Wetlands Board it did not need to file a separate application. Moreover, the Commission, acting as the Board, reviewed the application at its June 24, 1990 meeting. The notation states: "[D]iscussed location of road relative to neighboring homes, trees to be removed, stream to be crossed." Action: `None'". (Return Item t). There is no indication in the record that a wetlands application was actually filed in compliance with the statute. Rather, there is an acknowledgment by the applicant that a wetlands crossing required to construct the sewer main would be addressed in an application at a later date. The plaintiff's engineer, Mr. Rubinow, stated "[a]t such time as when we implement those construction plans we recognize that we have to prepare an application for this Commission." (Return Item bb, p. 148). Additionally, it is clear to the court from even a cursory review of the site plan, that a road culvert on the easterly side of the property abuts and flows into a pond and the large retainage basin abuts and discharges into the Great Swamp. CT Page 786 (Return Item gg).
While this court declines to accept the Commission's argument that the failure to file the application is a jurisdictional defect, it does recognize that such failure would and should be grounds for denial. Recently, in Arway v. Bloom, 29 Conn. App. 469 (1992), the Appellate Court reviewed the legislative history of P.A. 87-533 in which this language was enacted as well as P.A. 77-545 codified in General Statutes8-26 which contained similar language for subdivision review. The court noted that "[t]he zoning commission must give the wetlands commission report due consideration." Id., 479. See also, Ventres v. Inland Wetlands and Watercourses Commission, 25 Conn. App. 572, 575 (1991). The burden is thus on the applicant — it cannot be heard to complain if it fails to comply. This is especially true since the purpose of both the 1977 and 1987 legislative amendments was, in part, to "keep a developer from . . . dangling in the winds between a wetlands agency and a planning commission. . . . This way the applicant would not, as some have, go all through the subdivision procedure, get his approval and then find he could not get a building permit because he failed to get approval from the wetlands agency." Id., citing Rep. Polinsky, 20 H.R. Proc., Pt. 6, 1977 Sess., pp. 2411-12.
It is true that the Commission does not give as one of its stated reasons for the special permit denial this failure to comply with the statute. As previously mentioned, the court is primarily concerned with the stated reasons. Nevertheless, the issue was raised by the Commission and this court believes both the applicant and the Commission have failed to comply with the aforementioned statutes. Simply put, even though Commission owns many hats, it does not necessarily wear all of them at the same time. see, Treat v. Town Plan and Zoning Commission, 145 Conn. 406, 408 (1958).
 III.
Conclusion
This court recognizes that the town of Ridgefield does not have, as defined by the Legislature, sufficient affordable housing. The decision of the Commission should, however, be sustained. The reasons for the denial find support in the record and they are necessary to protect substantial CT Page 787 interests in matters legally appropriate for the Commission's concern. The appeal is dismissed.
MARSHALL K. BERGER, JR. JUDGE, SUPERIOR COURT